# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

In Re:

**Danny Ray Yett and
Frances Ann Yett,**

                **Debtors.**

**Bankruptcy Case
11-00949-JDP**

_____

# MEMORANDUM OF DECISION
_____

## *Introduction*

This contest focuses on the parties' differing interpretations of the

provisions of a confirmed chapter 12[1] plan.

Danny Ray Yett and Frances Ann Yett, dba Friesland Dairy

("Debtors"), filed an Objection to the proof of claim of creditor Zions

Agricultural Finance ("Zions"), contesting their liability for fees they

_____

[1]  Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal
Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 1

allegedly incurred for making late payments on their mortgage debt after

confirmation of their chapter 12 plan.  Debtors' Obj. at 1, Dkt. No. 96.

Zions, acting as  servicing agent for creditor U.S. Bank National

Association ("US Bank"), the mortgagee, responded, arguing that the late

charges were appropriate under the parties' contract documents and the

terms of Debtors' confirmed plan.  Zions's Resp. at 2, Dkt. No. 99.  Chapter

12 trustee, Forrest P. Hymas ("Trustee"), filed an Amended Chapter 12

Trustee's Recommendation addressing this dispute, and in it, joins Debtors

in requesting that Zions's claim for late charges be disallowed.  Trustee's

Am. Recommendation at 5, Dkt. No 104.

The parties presented evidence and oral argument at an evidentiary

hearing concerning the claim objection held on October 14, 2015.  Minute

Entry, Dkt. No. 105.  Having taken the issues under advisement, and

having considered the evidence, briefs, and arguments put forth, as well as

the applicable law, this Memorandum sets forth the Court's findings,

conclusions and reasons for its disposition of the objection.  Rules 7052;

9014.

MEMORANDUM OF DECISION – 2

*Facts*

On November 21, 2011, the Court entered an order confirming Debtors' Second Amended Chapter 12 Plan ("the Plan"). Dkt. No. 66. Under the Plan, Debtors were required to execute a milk assignment directing the creamery to which they sold their milk to make payments each month to Trustee. The Plan at 13-14, Dkt. No 63. The milk assignment was to continue for the 36-month term of the Plan, and was intended to provide the funds needed so Trustee could make the payments provided for in the Plan to US Bank and Debtors' other creditors. *Id*. Debtors complied, and a milk assignment was finalized on December 14, 2011. Milk Assignment at 1, Exh. 104.

Trustee received the first distribution from the dairy on the milk assignment on January 3, 2012; he made the first plan payment to US Bank on January 11. Trustee Accounting of Payments at 1, Exh. 102. US Bank received this payment on January 12. Zions Ledger at 1, Exh. 201. From that time forward, payments were received by Trustee, and distributed to US Bank, in approximately monthly intervals until the end of the Plan. *See*

MEMORANDUM OF DECISION – 3

Trustee Accounting at 1-2, Exh. 102; Zions Ledger at 1, Exh 201.

After confirmation, Debtors complied with all of the terms and conditions of the Plan; they have now completed payments to Trustee, and are awaiting entry of a discharge.  Am. Trustee's Recommendation at 5, Dkt. No. 104.  However, at some point during this time, Debtors notified Trustee that they had received a notice that they were being assessed fees because the plan payments to US Bank were consistently late.[2]  Trustee attempted to resolve questions concerning the propriety of the late fees by contacting US Bank's servicing agent, Zions.  No resolution was reached, and no changes were made to the Plan to address any alleged late payment problems.

According to Zions, while Debtors have made their monthly payments on the mortgage, the current balance due for the accrued late fees is $5,686.  Zions Bank Statement at 1, Exh. 103.  This figure represents

------

[2] Trustee explained at the hearing that Debtors informed him about this notice towards the end of the term of the Plan, although he could not recall the exact date.  No evidence regarding when Debtors first became aware of the potential late charges was provided to the Court.

MEMORANDUM OF DECISION – 4

fees assessed for each of the 36 payments made by Trustee during the term

of the Plan, as well as for the first four payments made by Debtors

immediately following the completion of the Plan.  Zions Ledger at 1, Exh.

201.[3]

### *Analysis and Disposition*

### I.

Concerning the payment due date, the preamble of the Plan

provides:

> "Plan payments described herein to be made by the Trustee [to
> creditors] shall commence approximately 30 days after the Effective
> Date of the Plan."

The Plan at 1, Dkt. No. 63.  The "Effective Date" for the Plain is defined as

"the Confirmation Date."  *Id.* at 3.  Thus, the Effective Date of the Plan in

this case was November 21, 2011, the date it was confirmed by the Court.

Therefore, under the general terms of the Plan, payments by Trustee to

---

[3] Counsel for Zions explained at the hearing that, upon completion of the
36 month term of the Plan, Debtors began making direct payments to US Bank.
Aside from the first four direct payments mentioned above, Debtors have made
their monthly payments on time and have incurred no additional late fees.

MEMORANDUM OF DECISION – 5

creditors treated by the Plan were intended to commence on

approximately December 21 of that same year.  As noted above, though,

Trustee did not receive funds from Debtors to make creditor plan

payments until January 3, and he did not make his initial distributions

until January 11, 2012.

Despite this introductory provision, elsewhere in the Plan, in Article

VI, subparagraph D, there is a provision dealing solely with the treatment

of US Bank's allowed secured claims,[4] which provides that:

> "Commencing on December 1, 2011 Debtors shall pay to this class
> the claim in equal monthly payments based on interest at 6% per
> annum and a twenty year amortization."

*Id.* at 10.

Article VI, Subparagraph D further specifies that, "Except as

modified herein all remaining terms in the contract shall be unaltered."

This term of the Plan is important, because paragraph 1(c) of the US Bank

---

[4] Article VI, subparagraph D, specifies the treatment of Class 6A, a class
consisting solely of the allowed secured claim of US Bank.  The Plan at 4 and 10,
Dkt. No. 63.

MEMORANDUM OF DECISION – 6

promissory note, governing late payment fees, provides that:

> " . . . if any payment of principal and interest shall not be received by the 5th day of the month in which it is due and payable, the interest shall be payable on such defaulted payment at an increased rate equal to 5% per annum above the rate of interest applicable to this Note but for such nonpayment, subject to a minimum late charge of 5% of the amount of such defaulted payment."

Promissory Note at 1, Exh. 200.[5]

## II.

In light of these provisions, Zions argues that, under the specific provisions of the Plan concerning its treatment, the first payment on account of US Bank's claim was to be received by the creditor by December 1, 2011, and by the first of every month thereafter, during the term of the Plan.  Since the first payment, and each subsequent payment, was not received by the fifth day of the month in which the payments were due, US Bank contends it was entitled to assess late fees as provided

---

[5]  Notably, while the Plan expressly alters US Bank's contractual rights to charge and collect a default rate of interest post-confirmation, none of the Plan's provisions modify US Bank's entitlement to the late charges specified in the promissory note.  *See* The Plan at 10, Dkt. No. 63.

MEMORANDUM OF DECISION – 7

in the promissory note.

Debtors argue that they should not have to pay the late fees because once they delivered the milk assignment to the Trustee, they no longer had control over the timing of the payments and should not be held accountable, nor penalized, for any late payments to US Bank.  Debtors' Obj. at 4-5, Dkt. No. 96.  Debtors also argue that the due date for payments should not have been December 1, 2011, but December 21, 2011, a date "approximately 30 days after the effective date of the plan" as provided in the preamble of the Plan.  *Id.* at 2-3.[6]

### III.

"Although confirmation of a plan generally acts as a final order . . . a plan which is ambiguous as to a material term is subject to interpretation by a reviewing court."  *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004).  A "contract is ambiguous if it is capable of more than one

---

[6] Zions pointed out that even if the due date were the 21st of each month, only seven payments made during the term of the plan were timely received so as to avoid fees for late payment.  Zions's Resp. at 2-3.

MEMORANDUM OF DECISION – 8

reasonable interpretation." *Id.* (quoting *Badie v. Bank of Am.*, 79 Cal.Rptr.2d

273, 286 (1998) and citing *Local Motion, Inc. v. Niescher*, 105 F.3d 1278, 1280

(9th Cir. 1997) (per curiam)).

"A chapter 11 Bankruptcy plan is essentially a contract between the

debtor and his creditors and must be interpreted according to the rules

governing the interpretation of contracts." *Id.* (citing *Hillis Motors, Inc. v.*

*Haw. Auto. Dealers Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993), *superceded by*

*statute on other grounds*, Pub.L. No. 105–277, § 603, 112 Stat. 2681, 2681–886

(1998)). *See also In re Bartleson*, 253 B.R. 75, 78-79 (9th Cir. BAP 2000);

*United States v. Goff*, 05.1 IBCR 3, 7 (Bankr. D. Idaho 2005). This is true

because "[a] reorganization plan resembles a consent decree[7] and

---

[7] The Supreme Court of the United State has explained that:

"Consent decrees are entered into by parties to a case after careful
negotiation has produced agreement on their precise terms. The parties
waive their right to litigate the issues involved in the case and thus save
themselves the time, expense, and inevitable risk of litigation. Naturally,
the agreement reached normally embodies a compromise; in exchange for
the saving of cost and elimination of risk, the parties each give up
something they might have won had they proceeded with the litigation.
Thus the decree itself cannot be said to have a purpose; rather the parties

MEMORANDUM OF DECISION – 9

therefore, should be construed basically as a contract." *Hillis Motors*, 997

F.2d at 588 (citations omitted).

While the Ninth Circuit case law regarding the interpretation of

chapter 12 plans is sparse, other courts have held that debt adjustment

plans confirmed under chapter 12 and chapter 13 of the Code are also like

consent decrees, and should likewise be interpreted according to contract

principles.  *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000) (. . . in the

bankruptcy context . . . a confirmed [chapter 13] plan acts more or less like

a court-approved contract or consent decree that binds both the debtor and

all the creditors."); *In re Schellhorn*, 280 B.R. 847, 854 (Bankr. N.D. Iowa

2002) (holding that a chapter 12 plan is analogous to a consent decree and

construing it based on contract principles).

---

have purposes, generally opposed to each other, and the resultant decree
embodies as much of those opposing purposes as the respective parties
have the bargaining power and skill to achieve. For these reasons, the
scope of a consent decree must be discerned within its four corners, and
not by reference to what might satisfy the purposes of one of the parties to
it."

*United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971).

MEMORANDUM OF DECISION – 10

State law governs the interpretation of bankruptcy plans. *Hillis Motors*, 997 F.2d at 588 ("state law constitutes the federal rule of decision here and governs our interpretation of [Debtor's] plan.") (citations omitted). *See also Miller*, 363 F.3d at 1006 (applying California law to interpret a chapter 11 plan); *Goff*, 05.1 IBCR at 7. Under Idaho law, when interpreting contracts, courts "consider the language of the agreement 'the best indication of the parties' intent.'" *City of Meridian v. Petra Inc.*, 299 P.3d 232, 244 (Idaho 2013) (quoting *Straub v. Smith*, 175 P.3d 754, 758 (Idaho 2007)). However, "when contractual provisions conflict, 'the interpretation of the written contract and of the intent of the parties is a matter for the trial judge's discretion.'" *Id.* at 246 (quoting *Haener v. Ada Cnty. Highway Dist.*, 697 P.2d 1184, 1187 (Idaho 1985)). When interpreting them, Idaho courts are to construe "the contract against the person who prepared the contract." *Id.* at 244 (quoting *Straub*, 175 P.3d at 758). Also, "[i]t is well established that specific provisions in a contract control over general provisions where both relate to the same thing." *Id.* at 246 (quoting

MEMORANDUM OF DECISION – 11

*Twin Lakes Vill. Prop. Ass'n, Inc. v. Crowley*, 857 P.2d 611, 617 (Idaho 1993)).

## IV.

The preamble of the Plan provides that monthly payments by

Trustee to creditors were to commence on approximately December 21,

2011. However, Article VI provides that payments to US Bank were to

commence on December 1 of the same year, with payments due on the 1st

of every month thereafter. Since these provisions of the Plan, in operation,

conflict, the Court concludes that the Plan is ambiguous concerning the

commencement date, and due date thereafter, of the payments on the US

Bank claim. To resolve this ambiguity, the Court is instructed to apply

basic principles of Idaho contract law. Doing so, the Court, exercising its

discretion, and construing the contract against Debtors as the drafters of

the Plan, concludes that the due date for payments to be received by US

Bank was to be December 1, 2011, and the first of each month thereafter.

Article VI, subparagraph D, which establishes the original due date

MEMORANDUM OF DECISION – 12

for US Bank payments as December 1, controls in this case because it is the

most specific provision.  Both this provision, and the preamble language

about the "approximate" date payments by Trustee to creditors were to

commence, relate to payment due dates.  However, the introductory

provision generally addresses payments to be made by the Trustee,

whereas the later provision in Article VI, subparagraph D, deals solely

with the distributions to be made to a single creditor, US Bank.  The

ledgers prepared by Trustee and Zions show that every payment by

Trustee to US Bank, from the commencement of payments under the Plan

through March 1, 2015, was received by the creditor well after the fifth day

of the month.  Since the Plan left the late payment provisions under the

promissory note unaltered, any payment made to US Bank after the fifth

day of each month was late, and as a result, US Bank was entitled to assess

a fee of 5% of the payment.

Accordingly, because US Bank's assessment of late fees was

appropriate under the terms of the Plan, drafted by Debtors, and

MEMORANDUM OF DECISION – 13

confirmed by the Court, Debtors are liable for each of the late fees they incurred after confirmation of the Plan. Because the accuracy of Zions's accounting of these late fees is not challenged, the full claim for late fees of $5,686 will be allowed.

### *Conclusion*

As the Plan did not modify US Bank's right to impose fees for late monthly payments, and because all of the Plan's payments were made late, Debtors must pay the late fees assessed by US Bank.

Debtors' objection to the Zions claim filed as servicing agent for US Bank will be denied. A separate order will be entered.

Dated: November 4, 2015

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 14